**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
(ROCKFORD)**

| | |
|---|---|
| Otis Hackett, | |
| Plaintiff, | No. 25-cv-50223 |
| v. | |
| State of Illinois, et al., | Hon. Rebecca R. Pallmeyer |
| Defendants. | |

**ANSWER TO PLAINTIFF'S COMPLAINT BY
DEFENDANTS MATTHEW FRALEY AND BRANDON EISENBERG**

Defendants, Matthew Fraley and Brandon Eisenberg, ("Defendants"), by and through their counsel, Kwame Raoul, Attorney General for the State of Illinois, and pursuant to Rule 8 of the Federal Rules of Civil Procedure, hereby answer Plaintiff's Complaint as follows:

**Parties**

1.      At all times relevant hereto, Plaintiff Otis Hackett was a citizen of the United States and resident of the City of Cicero, county of Cook, State of Illinois.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

2.      Plaintiff Otis Hackett has been appointed the Independent Administrator of Robert Cobbins' Estate by the Circuit Court of the Fifteenth Judicial Circuit in Lee County, Illinois.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

3.      Dixon Correctional Center is managed, operated, and administered by the State of Illinois.

**ANSWER: Admit.**

4.      Officer Matthew Fraley is and was at all times relevant a correctional officer at Dixon Correctional Center acting under color of law and within the scope of his employment. He is sued in his individual capacity.

**ANSWER: Admit.**

5.      Officer Brandon Eisenberg is and was at all times relevant a correctional officer at Dixon Correctional Center acting under color of law and within the scope of his employment. He is sued in his individual capacity.

**ANSWER: Admit.**

6.      Andrea Tack is and was at all times relevant the Assistant Warden at Dixon Correctional Center acting under color of law and within the scope of her employment. She is sued in her individual capacity.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

7.      Christine Brannon-Dortch is and was at all times relevant the Deputy Director at Dixon Correctional Center acting under color of law and within the scope of her employment. She is sued in her individual capacity.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

8.      Patrick Horn is and was at all times relevant the Northern Regional Psychologist Administrator for the Illinois Department of Corrections. He was acting under the color of law and within the scope of his employment. He is sued in his individual capacity.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

## Jurisdiction

9. This Court has jurisdiction over federal questions pursuant to 28 U.S.C. §§ 1331, 1343.

**ANSWER: Admit.**

10. Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of civil rights under the Fourth and First Amendments to the U.S. Constitution.

**ANSWER: Defendants admit that Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983 and 1988. Defendant denies the remainder of this paragraph.**

## Facts Common to All Counts

11. On August 3, 2023, Robert Cobbins was incarcerated in House Unit 43, Cell 18 of the Dixon Correctional Center.

**ANSWER: Admit.**

12. Byron Boykins was housed in Unit 43, Cell 17, next to Mr. Cobbins.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

13. Cordell Prince was housed in Unit 43, Cell 19, next to Mr. Cobbins.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

14. Shelby Williams was also housed in Dixon Correctional Center.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

15.     In House Unit 43, there is an officer station called the "control bubble" where officers on duty sit to monitor the Unit.

**ANSWER: Admit.**

16.     At approximately 2:30 p.m. on August 3, 2023, Robert Cobbins approached the control bubble and had a conversation with Defendant Eisenberg.

**ANSWER: Defendant Eisenberg denies the allegations in this paragraph. The allegations in this paragraph are not directed at Defendant Fraley and thus, no response is required. To the extent that a response is required, Defendant Fraley lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

17.     At approximately 2:30 p.m. on August 3, 2023, Mr. Cobbins told Defendant Eisenberg that he was going to kill himself in the cell and sought access to a mental health provider and/or service.

**ANSWER: Defendant Eisenberg denies the allegations in this paragraph. The allegations in this paragraph are not directed at Defendant Fraley and thus, no response is required. To the extent that a response is required, Defendant Fraley lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

18.     Defendant Eisenberg knew that Mr. Cobbins was experiencing an acute mental health crisis and was at serious risk of suicide.

**ANSWER: Defendant Eisenberg denies the allegations in this paragraph. The allegations in this paragraph are not directed at Defendant Fraley and thus, no response is required. To the extent that a response is required, Defendant Fraley lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

19.     Defendant Eisenberg did not contact any medical or mental health provider, ask Mr. Cobbins' follow-up questions about his suicidal ideation, take instrumentalities away from Mr. Cobbins that could be used to commit suicide, take steps to have Mr. Cobbins placed in a setting with suicide precautions, or employ any other measures to protect Mr. Cobbins from his self-destructive tendencies.

**ANSWER: Defendant Eisenberg denies the allegations in this paragraph. The allegations in this paragraph are not directed at Defendant Fraley and thus, no response is required. To the extent that a response is required, Defendant Fraley lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

20.     In Housing Unit 43, Officers are required to complete 30-minute gallery checks, in which they are required to lay eyes on each individual in the gallery and confirm their safety and well-being.

**ANSWER: Admit.**

21.     Between 2:30 p.m. and 4 p.m., August 3, 2025, Defendant Fraley was required to complete the 30-minute gallery checks in Unit 43.

**ANSWER: Defendants deny the allegations in this paragraph to the extent that it pertains to events that occurred on August 3, *2025*. Defendant Fraley denies being required to complete 30-minute gallery checks in Unit 43 between 2:30pm and 3:00pm on August 3,**

**2023. Defendant Fraley admits the remaining allegations as applied to August 3, 2023. The allegations in this paragraph are not directed at Defendant Eisenberg and thus, no response is required. To the extent that a response is required, Defendant Eisenberg lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

22.     Officer Fraley completed a gallery check between 3:03 p.m. and 3:06 p.m. on August 3, 2025, and did not complete another one until 3:56 p.m.

**ANSWER: Defendants deny the allegations in this paragraph to the extent that it pertains to events that occurred on August 3, *2025*. Defendant Fraley admits that he completed a gallery check around 3:00pm on August 3, 2023. Defendant Fraley denies the remaining allegations. The allegations in this paragraph are not directed at Defendant Eisenberg and thus, no response is required. To the extent that a response is required, Defendant Eisenberg lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

23.     Officer Fraley falsified state documents and violated department rules when he documented that he completed a gallery check in Unit 43 at 3:15 p.m., 3:30 p.m., and 4 p.m.

**ANSWER: Defendant Fraley denies the allegations in this paragraph. The allegations in this paragraph are not directed at Defendant Eisenberg and thus, no response is required. To the extent that a response is required, Defendant Eisenberg lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

24.     Meanwhile, at approximately 3:44 p.m., Mr. Cobbins was tying a bed sheet around his own neck so that he could commit suicide.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

25.     On August 3, 2023, between 3:44 p.m. and 3:59 p.m., Robert Cobbins committed suicide in House Unit 43, Cell 18 of the Dixon Correctional Center.

**ANSWER: Defendants admit that Robert Cobbins committed suicide in housing unit 43 in cell 18 at Dixon Correctional Center. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

26.     Mr. Cobbins was designated a "Seriously Mentally Ill (SMI)" inmate.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

27.     Mr. Cobbins was on the mental health caseload at Dixon.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

28.     Mr. Cobbins was known by Defendants and mental health personnel to be seriously mentally ill and prone to acute mental health crises that made him a suicide risk.

**ANSWER: Defendants deny the allegations in this paragraph.**

29.     Defendants knew Mr. Cobbins had been housed in the Dixon Psychiatric Unit three months before his death.

**ANSWER: Defendants deny the allegations in this paragraph.**

30.     Defendants knew that two days before his placement in House Unit 43, Robert Cobbins was in a segregation cell due to an acute mental health crisis.

**ANSWER: Defendants deny the allegations in this paragraph.**

31.     Defendants were aware that Mr. Cobbins was prescribed antipsychotic medications.

**ANSWER: Defendants deny the allegations in this paragraph.**

32.     Defendants were aware that Mr. Cobbins had attempted suicide at least once in the year prior to his suicide.

**ANSWER: Defendants deny the allegations in this paragraph.**

33.     Defendants were aware that Mr. Cobbins had attempted suicide four times in his lifetime.

**ANSWER: Defendants deny the allegations in this paragraph.**

34.     Defendants were aware that Mr. Cobbins had been placed on crisis watch at least seven times in the year prior to his fatal suicide.

**ANSWER: Defendants deny the allegations in this paragraph.**

35.     The cells in Dixon's House Unit 43 are monitored via 30-minute gallery checks.

**ANSWER: Admit.**

36.     There are housing units in Dixon that are designed to implement heightened monitoring regimes so that officers and mental health professionals can more closely supervise inmates who are experiencing mental health crises and/or are a suicide risk.

**ANSWER: Admit.**

37.     There are housing units in Dixon that are outfitted to facilitate suicide prevention protocols such as more frequent monitoring, limited access to items that can facilitate suicide, and increased access to mental health resources, any and all of which can prevent and decrease the risk of suicide.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation that any and all of the suicide prevention protocols can prevent and decrease the risk of suicide. Defendants admit the remaining allegations in this paragraph.**

38.     At Dixon, inmates can be placed in crisis cells where they are subject to 24- hour watch to protect them from their self-destructive tendencies.

**ANSWER: Admit.**

39.     Two days prior to his suicide, Mr. Cobbins was on 24-hour watch, but was designated as appropriate for housing with less frequent monitoring.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

40.     Dixon has a large population of seriously mentally ill inmates.

**ANSWER: Defendants admit that Dixon Correctional Center houses inmates who are characterized as Seriously Mentally Ill. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation that this population is large.**

41.     There is a high incidence of self-harm and suicide in Dixon.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

42. Mr. Cobbins was housed in the Special Treatment Center (STC) at Dixon, which is reserved for seriously mentally ill inmates who require a heightened level of mental health care, treatment, and resources, compared to the general inmate population.

**ANSWER: Defendants admit that Mr. Cobbins was housed in the Special Treatment Center at Dixon and admit that mentally ill inmates are housed there. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

43. The risk of suicide amongst inmates at Dixon, particularly in the STC, is so substantial that Defendants Tack, Brannon-Dortch, and Horn must take reasonable steps to prevent it.

**ANSWER: The allegations in this paragraph are not directed at the Defendants and thus, no response is required. To the extent that a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

44. Such steps include ensuring that inmates who are a suicide risk are properly housed, that officers are completing their gallery checks, that inmates have access to mental health professionals, and that inmates who are a risk of suicide do not have access to lethal instrumentalities, including bed sheets.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

45.     Defendants Tack, Brannon-Dortch, Horn, the State of Illinois, by and through its agents, are individually and collectively responsible for ensuring that mentally ill inmates at Dixon receive appropriate care and are protected from their self-destructive tendencies.

**ANSWER: The allegations in this paragraph are not directed at the Defendants and thus, no response is required. To the extent that a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

46.     Mental health appointments, evaluations, follow-ups, and treatment planning at Dixon are chronically backlogged.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

47.     The mental health backlogs affect those inmates who have the most serious types of mental illness.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

48.     There is no comparable backlog of appointments related to physical, nonpsychiatric, and/or somatic ailments.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

49.     Failing to ensure that seriously ill inmates are evaluated by a mental health professionals, receive follow-up appointments, and have a detailed treatment plan to adhere to increases their risk of suicide.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

50.     Mr. Cobbins did not have regular mental health appointments, an adequate treatment plan to address his serious mental illness, or access to a mental health professional during periods of crisis, such as that which occurred on August 3, 2023.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

51.     Mr. Cobbins lack of an adequate treatment plan and access to mental health services substantially increased his risk of suicide.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

52.     In the period immediately preceding his suicide, including when he notified Defendant Eisenberg of his suicidal intent, Mr. Cobbins was experiencing a serious medical condition and an acute mental health crisis.

**ANSWER: Defendant Eisenberg denies being notified of Mr. Cobbins' suicidal intent. Defendant Eisenberg lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph. The allegations in this paragraph are not directed at Defendant Fraley and thus, no response is required. To the extent that a**

response is required, Defendant Fraley lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

53. According to Department of Corrections policy, crisis intervention staff and/or mental health providers should have been contacted immediately upon learning that Mr. Cobbins was contemplating suicide.

**ANSWER: Defendants deny learning that Mr. Cobbins was contemplating suicide. Defendants admit the remaining allegations in this paragraph.**

54. Security staff, such as Defendants Eisenberg and Fraley, are gatekeepers to mental health and crisis care.

**ANSWER: Denied.**

55. Security staff, such as Defendants Eisenberg and Fraley, are typically the individuals responsible for connecting inmates with mental health professionals once made aware of a serious mental health concern.

**ANSWER: Defendants admit that security staff are responsible for connecting inmates with mental health professionals once made aware of mental health concerns. Defendants deny that security staff are the only individuals responsible for doing so.**

56. Defendants Tack, Brannon-Dortch, and Horn, all of whom are agents of the State of Illinois, knew that officers at Dixon frequently did not respond to crisis complaints, did not believe inmates were in crisis when the inmate reported it, and threatened disciplinary action for inmates requesting crisis care. They disregarded this risk.

**ANSWER: The allegations in this paragraph are not directed at the Defendants and thus, no response is required. To the extent that a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

57.     Defendants Tack, Brannon-Dortch, and Horn, all of whom are agents of the State of Illinois, knew that security staff, such as Defendants Eisenberg and Fraley, act as gatekeepers to mental health care, often preventing inmates from accessing mental health care even when they self-harm or threaten suicide.

**ANSWER: Defendants deny acting as gatekeepers to mental health care and deny preventing inmates from accessing mental health care. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

58.     In the period immediately preceding his suicide, including when he notified Defendant Eisenberg of his suicidal intent, Mr. Cobbins was in need of access to a mental health provider and mental health services.

**ANSWER: Defendant Eisenberg denies being notified of Mr. Cobbins' suicidal intent. Defendant Eisenberg lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph. The allegations in this paragraph are not directed at Defendant Fraley and thus, no response is required. To the extent that a response is required, Defendant Fraley lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

59.     The State of Illinois, by and through its agents, routinely refers inmates with somatic illness and physical injury to the necessary medical providers.

**ANSWER: The allegations in this paragraph are not directed at the Defendants and thus, no response is required. To the extent that a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

60.     The State of Illinois, by and through its agents, routinely failed to refer mentally ill inmates with mental illness undergoing an acute mental health crisis to the necessary medical and/or mental health treaters.

**ANSWER: The allegations in this paragraph are not directed at the Defendants and thus, no response is required. To the extent that a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

61.     Mr. Cobbins suffered from a mental impairment that substantially limited major life activities, including thinking, interacting with others, and controlling his behavior.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

62.     As a result of this mental impairment, Mr. Cobbins required inpatient psychiatric therapy.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

63.     The State of Illinois failed to provide Mr. Cobbins with inpatient psychiatric treatment, thus depriving him of access to services, programs, and activities, including education, programming, recreation, exercise, human interaction, and mental health treatment.

**ANSWER: The allegations in this paragraph are not directed at the Defendants and thus, no response is required. To the extent that a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

64.     Defendants Tack, Brannon-Dortch, Horn, the State of Illinois, by and through its agents, knew that inmates at Dixon were routinely being referred to the appropriate medical providers when they were suffering physical or somatic ailments, but not when they were suffering an acute mental health crisis.

**ANSWER: The allegations in this paragraph are not directed at the Defendants and thus, no response is required. To the extent that a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

65.     Defendants Tack, Brannon-Dortch, Horn, the State of Illinois, by and through its agents, knew that the failure to refer mentally ill inmates undergoing acute mental health crises to the appropriate medical or mental health provider posed a substantial risk of harm to those inmates, but disregarded that risk.

**ANSWER: The allegations in this paragraph are not directed at the Defendants and thus, no response is required. To the extent that a response is required, Defendants lack**

**knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

66.     When Mr. Cobbins approached Defendant Eisenberg and told him that he was going to commit suicide, Defendant Eisenberg denied him access to medical services to address his acute mental health crisis and forced him to go back to his cell.

**ANSWER: Defendant Eisenberg denies the allegations in this paragraph. The allegations in this paragraph are not directed at Defendant Fraley and thus, no response is required. To the extent that a response is required, Defendant Fraley lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

67.     Officers at Dixon, including Defendants Eisenberg and Fraley, routinely failed to take seriously the dangers associated with mentally ill inmates, such as selfharm and suicide, and failed to supervise and monitor them appropriately.

**ANSWER: Denied.**

68.     Defendants Tack, Brannon-Dortch, Horn, the State of Illinois, by and through its agents, knew that officers in Dixon and the STC were routinely failing to take seriously the dangers associated with mentally ill inmates, such as selfharm and suicide, supervise or monitor them appropriately, and refer them to mental health services when appropriate.

**ANSWER: The allegations in this paragraph are not directed at the Defendants and thus, no response is required. To the extent that a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

69.     Defendants Tack, Brannon-Dortch, Horn, the State of Illinois, by and through its agents, facilitated, approved, condoned, or turned a blind eye to the failures at Dixon to properly house mentally ill inmates, ensure that officers completed their gallery checks, ensure that mentally ill inmates have access to mental health professionals and resources, and prevent inmates at risk of suicide from accessing lethal instrumentalities.

**ANSWER: The allegations in this paragraph are not directed at the Defendants and thus, no response is required. To the extent that a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

<u>Causes of Action</u>

**Section 1983, Eighth Amendment**

*Plaintiff v. Defendants Eisenberg and Fraley*

70.     Each paragraph of this complaint is repeated and incorporated in this section as though fully set forth herein.

**ANSWER: The Defendants repeat and reincorporate their answers to each paragraph of this complaint as though fully set forth herein.**

71.     Plaintiff is entitled to relief against Defendants Eisenberg and Fraley for violation of the Eighth Amendment's protections against cruel and unusual punishment. The Fourteenth Amendment to the United States Constitution incorporates and applies to states the Eighth Amendment's protections against cruel and unusual punishment.

**ANSWER: Denied.**

72.     Plaintiff is entitled to relief for violation of the Eighth Amendment's prohibition against cruel and unusual punishment and the Fourteenth Amendment's Due Process Clause.

**ANSWER: Denied.**

73.     In the manner described more fully above, Defendants Eisenberg and Fraley acted with deliberate indifference to Mr. Cobbins' condition.

**ANSWER: Denied.**

74.     As a direct and proximate result of Smith's reckless, callous, and deliberate indifference, Robert Cobbins experienced pain and suffering.

**ANSWER: The allegations in this paragraph are not directed at the Defendants, since they are directed at "Smith" and thus, no response is required. To the extent that a response is required and that the allegations are directed to them, Defendants deny the allegations in this paragraph.**

75.     As a direct and proximate result of their deliberate indifference, Robert Cobbins suffered severe emotional distress, physical injuries, and ultimately death.

**ANSWER: Denied.**

### Section 1983, Eighth Amendment  (Supervisory Liability)
*Plaintiff v. Defendants Tack, Brannon-Dorth, and Horn*

76.     Each paragraph of this complaint is repeated and incorporated in this section as though fully set forth herein.

**ANSWER: The Defendants repeat and reincorporate their answers to each paragraph of this complaint as though fully set forth herein.**

77.     In the manner more fully described above, Defendants Tack, Brannon-Dortch, and Horn acted with deliberate indifference towards mentally ill inmates at Dixon, such as Mr. Cobbins.

**ANSWER: The allegations in this paragraph are not directed at the Defendants and thus, no response is required. To the extent that a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

78.     Defendants Tack, Brannon-Dortch, and Horn knew that their deliberate indifference would have an adverse impact on mentally ill inmates at Dixon, such as Mr. Cobbins, but disregarded that risk.

**ANSWER: The allegations in this paragraph are not directed at the Defendants and thus, no response is required. To the extent that a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

79.     As a direct and proximate result of their deliberate indifference, Mr. Cobbins suffered severe emotional distress, physical injuries, and ultimately death.

**ANSWER: The allegations in this paragraph are not directed at the Defendants and thus, no response is required. To the extent that a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

**Americans with Disabilities Act**

*Plaintiff v. State of Illinois*

80. Each paragraph of this complaint is repeated and incorporated in this section as though fully set forth herein.

**ANSWER: The Defendants repeat and reincorporate their answers to each paragraph of this complaint as though fully set forth herein.**

81. Congress enacted the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

**ANSWER: The allegations in this paragraph constitute a legal conclusion and thus, no response is necessary. To the extent that a response is necessary, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

82. To prevent discrimination, 28 C.F.R. § 35.130(b)(7) requires a public entity to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the services, program, or activity."

**ANSWER: The allegations in this paragraph constitute a legal conclusion and thus, no response is necessary. To the extent that a response is necessary, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

83. The State of Illinois is a public entity as defined in 42 U.S.C. § 12131(1).

**ANSWER: The allegations in this paragraph constitute a legal conclusion and thus, no response is necessary. To the extent that a response is necessary, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

84.     At all times relevant to this Complaint, in light of his severe mental illness, Mr. Cobbins was a qualified individual with a disability within the meaning of Title II of the ADA, 42 U.S.C. § 12131(2), and had a right not to be subjected to discrimination on the basis of his disability by Defendant.

**ANSWER: The allegations in this paragraph constitute a legal conclusion and thus, no response is necessary. To the extent that a response is necessary, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

85.     Due to his mental illness, Mr. Cobbins frequently contemplated and engaged in suicidal behavior and could not take adequate care of himself.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

86.     As an inmate at Dixon, Mr. Cobbins was wholly dependent upon the State of Illinois for basic daily needs and appropriate accommodations, including mental health care and accommodations. Individuals in the custody of the State of Illinois are also dependent on it for all of their basic daily needs, including food, exercise, and safety.

**ANSWER: The allegations in this paragraph are not directed at the Defendants and thus, no response is required. To the extent that a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

87.     Under the Title II of the ADA and 28 C.F.R. § 35.130(a), the State of Illinois is responsible for ensuring that individuals in his custody with known disabilities are provided with reasonable accommodations to prevent discrimination on the basis of disability and are not, on the basis of disability, excluded from participation in or denied the benefits of services, programs, or activities because of their disability.

**ANSWER: The allegations in this paragraph are legal conclusions and thus, no response is required. To the extent that a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

88.     In the manner described more fully above, the State of Illinois failed reasonably to accommodate Mr. Cobbins' known and obvious disability and discriminated against him because of his disability.

**ANSWER: The allegations in this paragraph are not directed at the Defendants and thus, no response is required. To the extent that a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

89.     As a result of the wrongful conduct of the State of Illinois Mr. Cobbins' mental health condition was greatly exacerbated, he was subjected to unnecessary pain and suffering, and he died.

**ANSWER: The allegations in this paragraph are not directed at the Defendants and thus, no response is required. To the extent that a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

**Rehabilitation Act**

*Plaintiff v. State of Illinois*

90.     Each paragraph of this complaint is repeated and incorporated in this section as though fully set forth herein.

**ANSWER: The allegations in this paragraph are not directed at the Defendants and thus, no response is required. To the extent that a response is required, Defendants repeat and reincorporate their answers to each paragraph of Plaintiff's complaint.**

91.     The purpose of the Rehabilitation Act is to ensure that no "qualified individual with a disability in the United States . . . shall, solely by reason of [ ] disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

**ANSWER: The allegations in this paragraph are legal conclusions and thus, no response is required. To the extent that a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

92.     Mr. Cobbins was, at all times relevant to this complaint, a qualified individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(2), and has a right not to be subjected to discrimination on the basis of his disability. 29 U.S.C. § 794(a).

**ANSWER: The allegations in this paragraph are legal conclusions and thus, no response is required. To the extent that a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

93.     The State of Illinois receives Federal financial assistance within the meaning of 29 U.S.C. § 794(a).

**ANSWER: The allegations in this paragraph are legal conclusions and thus, no response is required. To the extent that a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

94.     The State of Illinois constitutes "program[s] or activit[ies]" within the meaning of 29 U.S.C. § 794(b)(1)(A)-(B) and/or (b)(2)(B) and was required to comply with the Rehabilitation Act.

**ANSWER: The allegations in this paragraph are legal conclusions and thus, no response is required. To the extent that a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

95.     In the manner more fully described above, the State of Illinois failed to reasonably accommodate Mr. Cobbins' known and obvious disability and discriminated against him because of his disability.

**ANSWER: The allegations in this paragraph are not directed at the Defendants and thus, no response is required. To the extent that a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

96.     As a result of the wrongful conduct of the State of Illinois, Mr. Cobbins' mental condition was greatly exacerbated, and he was subjected to unnecessary pain, suffering, and death.

**ANSWER: The allegations in this paragraph are not directed at the Defendants and thus, no response is required. To the extent that a response is required, Defendants lack**

knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

<u>**Prayer for Relief**</u>

97.     Wherefore, Plaintiff respectfully requests the following relief:

   a.   Compensatory damages, in an amount to be ascertained at trial, for the constitutional violations causing injury and death.

   b.   Punitive damages, in an amount to be ascertained at trial, for the constitutional violations causing injury and death.

   c.   Attorneys' fees, costs, and expenses, pursuant to 42 U.S.C. § 1988 and the Illinois Civil Rights Act of 2003, 740 ILCS 23/1, et seq; and…

   d.   Any further relief this Court may deem just and proper.

**ANSWER: Defendants deny that Plaintiff is entitled to any relief whatsoever.**

98.     Plaintiff demands a jury trial.

**ANSWER: Admit.**

**JURY DEMAND**

Defendants demand a trial by jury on all issues so triable.

**AFFIRMATIVE DEFENSE**

NOW COME Defendants Eisenberg and Fraley, by and through their attorney, Kwame Raoul, Attorney General for the State of Illinois and for their Affirmative Defense to Plaintiff's Complaint, hereby state as follows:

1.     **Qualified Immunity:** At all relevant times, Defendants acted within the scope of their discretionary duties as government officials. Defendants assert qualified immunity because

their actions did not violate any clearly established constitutional right of which a reasonable official in their position would have known. Specifically, and without limitation, there is no clearly established precedent that would have put Defendants on notice that their actions regarding Plaintiff's allegations violated the Eighth Amendment or any other law. Moreover, no reasonable government official in Defendants' position would have been on notice that their specific conduct was clearly unlawful under existing precedent. Based on the facts known to Defendants at the time, their actions were objectively reasonable, and they are therefore entitled to qualified immunity.

Dated: August 15, 2025

Respectfully submitted,

/s/ Thomas Pietryla
Thomas Pietryla
Office of the Illinois Attorney General
115 S. LaSalle St.
Chicago, IL 60603
217-720-9690
thomas.pietryla@ilag.gov