## IN THE U.S. DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | | |
|---|---|---|
| Otis Hackett, as Independent Administrator of the Estate of Robert Cobbins, | ) ) ) | |
| Plaintiff, | ) ) | No: 25-cv-50223 |
| v. | ) ) ) | |
| Officer Matthew Fraley, et al, | ) ) | Hon. Rebecca R. Pallmeyer |
| Defendants. | ) ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS

Plaintiff, Otis Hackett, as Independent Administrator of the Estate of Robbert Cobbins, by and through his attorneys, Romanucci & Blandin, LLC, hereby submits the following response to the Motion to Dismiss filed by the State of Illinois, Christine Brannon-Dortch, Patrick Horn, and Andrea Tack. In support, Plaintiff states as follows:

## INTRODUCTION

Robert Cobbins was incarcerated at Dixon Correctional Center ("Dixon"), where Defendants Brannon-Dortch, Horn, and Tack were senior officials responsible for supervising Dixon's inmates and their mental health protocols. ECF 1¶¶ 21-23, 62-72. Like many inmates at Dixon, Mr. Cobbins was seriously mentally ill, and had a documented history of serious mental illness, suicidal ideation, and suicide attempts (one of which occurred within the past year in the Department of Corrections), and multiple placements on crisis or suicide watch while incarcerated at Dixon. ECF 1¶¶ 26-33, 42-50.

Unfortunately for Mr. Cobbins, he was housed in a prison that is rife with grossly deficient suicide prevention practices. Brannon-Dortch, Horn, and Tack (the Supervisory

1

Defendants) were aware of the broader suicide risks attendant to suicidal inmates at Dixon due to deficient policies and practices within the prison. Plaintiff specifically alleges that officers at Dixon frequently did not respond to crisis complaints, did not believe inmates were in crisis when the inmate reported it, threatened disciplinary action for inmates requesting crisis care, and prevented inmates from accessing mental health care even when they self-harm or threaten suicide. ECF 1 ¶¶ 56-57, 60, 64-65, 68. Plaintiff further alleges that the Supervisory Defendants' response to the systemic problems was to turn a blind eye to the failures and allow the unconstitutional practices to persist. Id. ¶ 69. All of this occurred within a prison that the Supervisory Defendants knew had both a high incidence of suicide and volume of seriously mentally ill inmates. Id. ¶¶ 40-41, 43.

On August 3, 2023, Mr. Cobbins communicated suicidal intent to a Dixon officer, but was neither placed on suicide-watch nor given immediate access to mental-health care; instead, he was left unsupervised in a cell with access to lethal instrumentalities. ECF 1 ¶ 19. The same day, Dixon staff failed to complete a 30-minute gallery check between 2:30 p.m. and 4:00 p.m. on Mr. Cobbins's unit, and instead falsified state documents by stating gallery checks were completed in Mr. Cobbins's unit at 3:15 p.m., 3:30 p.m., and 4:00 p.m. Id. ¶¶ 20-23. These actions followed the systemic failures at Dixon, and at approximately 3:44 p.m., Mr. Cobbins tied a bed sheet around his neck and died by suicide. Id. ¶¶ 24.

**LEGAL STANDARD**

Defendants moved to dismiss Plaintiff's Complaint at Law pursuant to Federal Rule of Civil Procedure 12(b)(6), by arguing Plaintiff has failed to state a claim for which relief can be granted. To survive such a motion, a complaint must include sufficient factual

allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In evaluating a motion to dismiss, courts must accept all "well-pleaded factual allegations and [the] inferences reasonably drawn from them." *Yeksigian v. Nappi*, 900 F.2d 101, 102 (7th Cir. 1990). Dismissal is appropriate "only if the plaintiff has failed to allege any set of facts upon which relief may be granted." *Id.*; *see also Doherty v. City of Chi.*, 75 F.3d 318, 322 (7th Cir. 1996) (Courts dismiss only "if it appears beyond doubt that the plaintiff could prove *no set of facts entitling him to relief*." (emphasis added)). The purpose of a Rule 12(b)(6) motion is "to test the sufficiency of the complaint, not to decide the merits." *Triad Assocs. v. Chi. Hous. Auth.,* 892 F.2d 583, 586 (7th Cir. 1989).

## ARGUMENT

Plaintiff has brought supervisory liability claims against Andrea Tack, Christine Brannon-Dortch, and Patrick Horn (the Supervisory Defendants) for their deliberate indifference towards mentally ill inmates at Dixon such as Mr. Cobbins.[1] ECF 1 at ¶ 77. Ms. Tack is the Assistant Warden of Dixon Correctional Center, and Ms. Brannon-Dortch is the Deputy Director. ECF 1 ¶¶ 6-7. Mr. Horn is the Northern Regional Psychologist Administrator for the Illinois Department of Corrections. Id. ¶ 8. As individuals with supervisory authority at Dixon, Tack, Brannon-Dortch, and Horn are individually and collectively responsible for ensuring that mentally ill inmates at Dixon receive appropriate care and are protected from their self-destructive tendencies. Id. at ¶ 45. Plaintiff has plausibly alleged that they breached this duty by turning a blind eye to the systemic failures within Dixon which routinely deprived suicidal inmates of constitutional protections.

---

[1] Plaintiff abandons his Americans with Disabilities Act and Rehabilitation Act claims against the State of Illinois.

The Supervisory Defendants bring their Motion to Dismiss arguing that Plaintiff has failed to state a claim against them under Section 1983, but they have failed to meet their burden in doing so. In any event, Plaintiff has plausibly alleged a theory of supervisory liability and given them fair notice of the claims against them.

## I. The Supervisory Defendants have not met their burden.

The Supervisory Defendants' portion of their motion is less than a page of argument that ultimately amounts to a mere statement that Plaintiff is barred from bringing *respondeat superior* claims. ECF 34 at 2. The defendants have the burden on a motion to dismiss to establish the legal insufficiency of the complaint. *Yeksigian*, 900 F.2d at 104. Here, the Supervisory Defendants merely restate the law that there is no vicarious liability under § 1983, relying on *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). *Iqbal* rejected *respondeat superior* liability, but it did not foreclose liability for a supervisor's "own misconduct." *Id*.

Here, Plaintiff alleges that supervisory officials were personally involved by knowingly turning a blind eye to the routine failures to address the substantial risks of suicide at Dixon. ECF 1 ¶¶ 40-49, 67-79. As explained, *infra*, these failures are their own, and liability is not based in *respondeat superior*. Defendants do not address the elements of § 1983 *supervisory* liability articulated in any case law or jury instructions (which are discussed in detail, *infra*). They do not address the many alleged facts supporting the supervisory claims in the Complaint, and they do not explain *why* the facts alleged in the complaint fail to state supervisory liability claim. They have not met their burden of proof, and their motion should be denied.

## II.   Plaintiff has pled a plausible supervisory liability claim.

Plaintiff's claims against the Supervisor Defendants allege that they knowingly failed to remedy systemic deficiencies which deprived inmates of protection from suicide and ultimately resulted in Mr. Cobbins' death. Defendants argue that there is "no supervisory or vicarious liability under § 1983." This is not true. The Seventh Circuit has explicitly recognized supervisory liability claims under §1983—*see Ollison v. Gossett,* 136 F.4th 729 (7th Cir. 2025)—and the Seventh Circuit Pattern Jury Instructions specifically include an instruction on Constitutional Torts: 42 U.S.C. §1983 – Liability of a Supervisor:

> To plead a claim against a supervisor such as the Supervisory Defendants a plaintiff must allege that they 1) knew that officers they supervised had a practice of committing constitutional violations in similar situations, and 2) approved, assisted, condoned, and/or purposely ignored those constitutional violations.

Seventh Circuit Pattern Jury Instructions, 7.23.

Additionally, in *Ollison*, the Seventh Circuit specified that "[s]enior prison officials may be liable for systemic constitutional violations." 136 F.4th at 736. To prevail on a systemic deficiency claim, the plaintiff must demonstrate that "there are such systemic and gross deficiencies in staffing, facilities, equipment, or procedures that the inmate population is effectively denied access to adequate medical care." *Id*. And he must prove that the wardens knew of and disregarded a substantial risk of harm to him. *Id*. Such is consistent with the Pattern Jury Instruction: a supervisor's liability is predicated upon their 1) knowledge of an unconstitutional practice and 2) failure to address the unconstitutional practice, which is enough to subject them to §1983 claims.

5

**A. The Supervisory Defendants knew of Dixon's unconstitutional practices.**

Plaintiff alleges the Supervisory Defendants knew about multiple unconstitutional practices at Dixon, including the routine denial of care to people experiencing a mental health crisis in which officers frequently failed to respond to crisis complaints and even threatened disciplinary action for inmates requesting crisis care. ECF 1 ¶ 56-57, 50. Plaintiff also alleges that the Supervisory Defendants knew that officers like Fraley and Eisenberg often prevent inmates from accessing mental health care when they self-harm or threaten suicide. Id. ¶ 57.

These allegations support a plausible inference that there are serious, life-threatening practices at Dixon which deprive suicidal inmates of constitutional protections. It is clearly established that a person's "right to be free from deliberate indifference to his risk of suicide was violated if the defendant had actual knowledge of the serious risk of suicide and 'chose to do nothing.'" *Chilcutt v. Santiago*, No. 22-2916, 2023 WL 4678583 at *4 (7th Cir. July 21, 2023). Further, a suicidal threat combined with at least one prior suicide attempt is sufficient to put an officer on notice of a risk of suicide. *Id*. at *2. Here, not only did Fraley and Eisenberg know that Mr. Cobbins had previously attempted suicide and ignored his final suicidal threat, ECF 1 ¶¶ 17-2027-34, they did so in compliance with the practice of ignoring suicidal threats and mental health crises. Id. ¶¶ 56-57, 60, 64-65, 68-69.

As supervisory officials, they are presumed to have knowledge of such practices. *Antonelli v. Sheahan*, 81 F.3d 1422, 1428 (7th Cir. 1996) (a hospital administrator's "position ... justifies the inference at this stage of the proceeding that he does bear some responsibility for the alleged misconduct). Plaintiff also pleads facts to support an inference that the

Supervisory knew of these grossly deficient practices at Dixon regarding suicidal inmates. Specifically, Plaintiff alleges that the Supervisory Defendants *knew* about Dixon officers' routine disregard of people who voice suicidal statements (ECF 1 ¶ 57), a failure to refer people suffering acute crises to mental health care (Id. ¶ 60), and even threatening inmates with discipline for indicating their self-destructive intent (Id. ¶ 56). They also knew these practices were occurring in a facility with a high volume of seriously mentally ill inmates, and high incidence of suicide. Id. ¶¶ 40-41, 43. Under these facts, it is plausible that the Supervisory Defendants knew about Dixon's culture of denying constitutional protections.

## B. The Supervisory Defendants turned a blind eye to constitutional violations.

The Supervisory Defendants argue that they cannot be held liable because they were not personally involved in the care or supervision of Mr. Cobbins. ECF 34 at 2. But supervisors can be personally involved by "facilitating, approving condoning, or turning a blind eye to a constitutional violation." *Miller v. Kozel*, No. 10 C 5381, 2011 WL 795887, at *1 (N.D. Ill. Feb. 25, 2011). In *Miller*, the plaintiff sufficiently pled a supervisory liability claim where they alleged that the director and superintendent of an Illinois Department of Juvenile Justice facility were liable where an inmate was able to hang himself from a bed because they knew that type of bed had frequently been used for suicides and attempts but took no reasonable steps to prevent the harm. *Id*. Notably, this Court found that "[b]y virtue of their positions, [the superintendent and director] would likely know about previous suicides and attempts and would have a say in the beds used in the facility." *Id*.

Like in *Miller*, Plaintiff does not allege that the Supervisory Defendants were directly involved in Mr. Cobbins care. Rather, Plaintiff alleges that they were deliberately

indifferent to the risk of suicide attendant to the inmates at Dixon even with knowledge of the high incidences of suicide at Dixon and unconstitutional practices that put inmates at risk. ECF 1 ¶¶ 40-41, 43, 46-47, 56-57, 6064-65, 68-69. And by virtue of their positions—assistant warden, deputy director, and regional mental health director—these Supervisory Defendants had authority to implement reasonable measures that would address the widespread practice of ignoring suicide risks. Id. ¶¶ 6-8, 43, 45, 69; *Miller*, 2011 WL 795887, at *1. Indeed, Plaintiff alleges that the Supervisory Defendants were senior officials, whose roles included being responsible for suicide-prevention policies at Dixon. ECF 1¶¶ 6-8, 21-23, 67-72. These supervisory officials at Dixon deliberately disregarded failures of their subordinate officers and failed to take corrective action. ECF 1 ¶¶ 40-49, 67-79. Plaintiff has properly pled allegations showing Defendants deliberate indifference when the Supervisory Defendants routinely disregarded substantial risks of suicide.

In *Ollison*, the plaintiff brought claims of systemic deficiencies by a supervisory defendant. 136 F.4th at 736. As their sole allegation of supervisory culpability, the *Ollison* plaintiff alleged that a warden was "aware of, facilitated, and/or turned a blind eye to the deficient practices which ultimately resulted in injury to [the plaintiff]." *Id*. The *Ollison* plaintiff's allegation contains no substantive indication about what the problems within this prison actually were, merely parroting the jury instruction language. That is not what Plaintiff does in this case. Here, Plaintiff has identified the specific problems which the Supervisory Defendants allowed to persist at Dixon: ignoring people who voice suicidal statements, refusing to refer inmates suffering acute crises to mental health care, and threatening inmates with discipline for indicating their self-destructive intent. ECF 1 ¶¶

56-57, 60. This is sufficient to put Defendants on notice of the plausible constitutional violations alleged against them.

## **CONCLUSION**

Plaintiff is not required to plead all the facts attendant to the deficient mental healthcare practices at Dixon that will ultimately support his case at trial and/or summary judgment. A complaint contains adequate information regarding the basis of the claim for relief if it contains even "the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Hass v. The RICO Enter.*, No. 03 C 8695, 2004 WL 1336255, at *2 (N.D. Ill. June 14, 20040); *See McCormick v. City of Chicago,* 230 F.3d 319 (7th Cir. 2000) ("The Supreme Court has made it very clear that federal courts must not apply a heightened pleading standard in civil rights cases alleging § 1983 municipal liability."). To prove claims like the ones against the Supervisory Defendants, plaintiff will engage in discovery to gather information about what occurs within the insular community of this prison. Without the benefit of Rule 30(b)(6) depositions and other discovery about the policies, procedures, and practices within Dixon, Plaintiff has alleged specific facts based on available information which make it plausible that Dixon has a practice of depriving suicidal inmates their constitutional protections. ECF 1 at ¶ 40-41, 43, 46-47, 56-57, 6064-65, 68-69. Plaintiff has not pled bare legal conclusions. Plaintiff has articulated the deficient policies which the Supervisory Defendants were deliberately indifferent to and led to Mr. Cobbins' death. This is enough to put the Supervisory Defendants on notice of the claims against them, and Plaintiff should be permitted to gather the relevant discovery.

Defendants' motion to dismiss Plaintiff's supervisory liability claim should be denied.

Plaintiff has plausibly alleged that Defendants Brannon-Dortch, Horn, and Tack knew of and disregarded systemic suicide-prevention failures at Dixon. For all the foregoing reasons, the Court should deny Defendants' Motion to Dismiss Plaintiff's claims against the Supervisory Defendants. However, if the Court identifies any pleading deficiencies, Plaintiff respectfully requests leave to amend the complaint to cure them.

Respectfully Submitted,

/s/ Sam Harton

Sam Harton
ROMANUCCI & BLANDIN
321 N Clark Street, STE 900
Chicago, Illinois 60654
Phone 312-253-8590
Fax    312-458-1004
Email sharton@rblaw.net