IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

OTIS HACKETT, as Independent Administrator of the Estate of Robert Cobbins,

Plaintiff,

v.

STATE OF ILLINOIS, et al.,

Defendants.

Case No. 25 C 50223

Rockford, Illinois
October 15, 2025
9:05 a.m.

TRANSCRIPT OF PROCEEDINGS - STATUS HEARING
BEFORE THE HONORABLE REBECCA R. PALLMEYER

APPEARANCES:

For the Plaintiff: ROMANUCCI & BLANDIN, LLC
BY: SAM HARTON
321 N. Clark Street
Chicago, Illinois 60654

For the Defendant: ILLINOIS ATTORNEY GENERAL'S OFFICE
BY: RAVI MEHTA
115 S. LaSalle Street, 28th Floor
Chicago, Illinois 60603

Court Reporter: HANNAH JAGLER, RMR, CRR, FCRR
Official Court Reporter
219 S. Dearborn Street, Room 2504
Chicago, Illinois 60604

* * * * *

PROCEEDINGS REPORTED BY STENOTYPE
TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION .

(Proceedings heard by phone:)

THE CLERK: 25-cv-50223, *Hackett v. State of Illinois*, for status.

THE COURT: Good morning. Could I get your appearances for the record? Beginning with counsel for Plaintiff.

MS. HARTON: Good morning. This is Sam Harton for the Plaintiff.

THE COURT: Good morning, Ms. Harton.

And for the defendant?

MR. MEHTA: Good morning, Your Honor. Assistant Attorney General Ravi Mehta for the state of Illinois, Matthew Fraley, Brandon Eisenberg, Andrea Tack, Christine Brannon-Dortch, and Patrick Horn.

THE COURT: Okay. Good morning.

I know that you've begun -- at least begun the process of discovery because there was a request and an entry of a qualified protective order, so I'm assuming that you're engaged at least initially in exchanging medical information.

There's a motion to dismiss filed by the persons I'm going to call the supervisory defendants, Andrea Tack, Christine Brannon-Dortch and Patrick Horn. In response to the motion to dismiss those defendants on the basis of -- on the basis that there's no superior -- respondeat superior liability for an Eighth Amendment claim, the plaintiff has cited portions

of the complaint, paragraphs of the complaint, 17 through 34, if I'm not mistaken. And when I look at those paragraphs, those are -- there's important information there, but none that directly identify knowledge or a basis for the knowledge that Ms. Tack, Ms. Brannon-Dortch, and Mr. Patrick Horn would have had. Not saying they weren't there, very well could have been there. If they were state law claims, state defendants would potentially have some liability there, apart from the whole, you know, Eleventh Amendment issues.

What I'd like to ask Plaintiff is to identify the specifics that would have put these three defendants, Tack, Brannon-Dortch, and Horn on notice of the concerns that led -- that support the claims against Mr. Fraley and Mr. Eisenberg.

MS. HARTON: Thank you, Judge. I apologize. I have the complaint up. Would you mind just telling me which -- reminding me which paragraphs you were referencing?

THE COURT: Well, I'm talking right now about what you cited in your motion -- in your response to the motion to dismiss. So just I want to make sure I get this right. If you look at your response to motion to dismiss, it's Docket Entry 39, your argument there was that the -- there are allegations that support these individuals' knowledge. For example, paragraph 6 through 8, 21 through 23, 67 through 72, those are all paragraphs about the supervisors' role.

But what I'm looking for would be allegations that

would have put the supervisory defendants on notice, for example, grievances that Mr. Hackett filed that they reviewed, complaints that he may have voiced of personal means to them, in conversations or in meetings, whether there are other written communications. Sometimes we see those.

Is there any specific basis that these three supervisory individuals would have -- that they would have known about his suicidal circumstances?

MS. HARTON: At this time, about Mr. Cobbins's specific suicidal circumstances, no, Your Honor. Our claims against the supervisory defendants arise out of their knowledge of the practices and policies within Dixon that underlie his ability to be able to commit suicide. So we talk about the policies and practices for the supervisory defendants, but we aren't alleging they had personal knowledge of Mr. Cobbins' mental -- or suicidal ideation.

However, we do have a document of their response to -- that demonstrates a response to Mr. Cobbins', you know, eventual suicide, and I expect we will fully get into discovery and learn more about what they did know. But this time, we don't have any allegations about their knowledge of his specific suicidal intent.

THE COURT: Okay. Then what I think I should do at this point is dismiss -- grant the motion to dismiss without prejudice. You will be doing discovery. I'm sure you will get

more information, potentially more specific information of what they knew and when they knew it.

And this -- given the fact that the complaint was filed within the statute of limitations in May, it sounds to me that a later complaint would relate back, so long as it's made, you know, reasonably after discovery of their roles. So in that respect the motion will be granted, again, without prejudice.

Now let me ask what -- where are we with respect to discovery?

MS. HARTON: So the plaintiff has issued discovery on September 15th I believe. I know that the responses are due today. And so I believe that was September 15th. And we are awaiting those responses for requests for production as well as interrogatories to the defendants who did not move to dismiss.

I also reached out to defense counsel on Monday and told them that I was in contact with -- or one really important third-party uncontrolled witness. I was able to find him, and he said that he is ready to testify whenever. And so if we can get him on the books, that's sort of the number one priority before we move on to the uncontrolled -- I mean, the controlled witnesses.

THE COURT: That makes sense. All that makes sense. And I know that we do have a discovery schedule in place. This is not the first status conference obviously. In August, we

have set a schedule that provides that all discovery will be complete by March, and sounds like you're well underway already, which is great.

Why don't we set another status, a telephone status in about, I want to say the middle of December. We'll see where you are at that point.

Has there been any settlement discussions?

MS. HARTON: I have spoken with my client and prepared them for our potential to issue demands in the next, you know, month or so, if the defendants are of course open to that conversation. I will say I think that this uncontrolled witness, it's a former inmate who was on the block that Mr. Cobbins was on and witnessed some things that are, you know -- that have not really been put into the record yet but would be very important, and I think once we sort of see what he testifies to, that's going to really help us understand what the value of this case is.

THE COURT: That makes sense. And obviously you'll be in touch with Mr. Mehta, who will coordinate with you on that discovery.

Okay. Then I'll just ask my deputy for a date in December for another telephone conference.

THE CLERK: All right, Judge. December 16th at 9?

THE COURT: That works for me, if it works for all of you.

MS. HARTON: That works for me, Judge.

MR. MEHTA: Works for me, Your Honor.

THE COURT: Thank you. Thanks for making the time this morning and you'll get an order from me later today. Thank you.

MR. MEHTA: Absolutely, Judge. Have a good day.

MS. HARTON: You too.

(Concluded at 9:12 a.m.)

° ° ° ° ° ° ° ° ° ° ° °

I certify that the foregoing is a correct transcript, to the extent possible, of the record of proceedings in the above-entitled matter, given the limitations of conducting proceedings remotely.

/s/ *Hannah Jagler*______ November 10, 2025___

Hannah Jagler, RMR, CRR, FCRR
Official Court Reporter